IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

ANDREA L. MATTHEWS LOGAN

VS.                                    CIVIL ACTION NO. 2:07CV157-NBB-DAS

MICHAEL J. ASTRUE,
Commissioner of Social Security

## REPORT AND RECOMMENDATION

      This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the

decision of the Commissioner of Social Security denying the applications of claimant Andrea L.

Matthews Logan for a period of disability and disability insurance benefits under Title II and

supplemental security income under Title XVI.  The parties have not consented to have a

magistrate judge conduct all the proceedings in this case.  Therefore, the undersigned submits

this report and recommendation to the United States District Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

      The claimant was born on July 15, 1968 and was thirty-seven years old at the time of the

hearing before the administrative law judge ("ALJ").  The claimant has a high school education;

three years of business college; and has worked as a clerk and customer service representative for

the Internal Revenue Service for approximately seventeen years.  On June 22, 2004, the claimant

filed an application for a period of disability and disability insurance benefits and supplemental

security income, alleging an onset of disability as of February 6, 2004.  Her application was

denied both initially and upon reconsideration, and the claimant timely requested and was

granted a hearing before an ALJ.  At the hearing, the claimant contended that because she

1

suffered from depression and hypertension, she was disabled and unable to work.  Nevertheless, in a decision dated March 28, 2007,  the ALJ found the claimant not disabled.  Contrary to her claim of disability, the ALJ found the claimant had the residual functional capacity to perform jobs that exist in significant numbers in the national economy.  The ALJ's decision rested as the final decision of the Commissioner on August 18, 2007 when the Appeals Council denied the claimant's request for review.  The ALJ's final decision is now ripe for review under section 205(g) of the Social Security Act.  42 U.S.C. § 205(g).

## II.  STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)*; Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court

may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. DISCUSSION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[5] Fourth, the claimant bears the

---

[1]*See* 20 C.F.R. §§ 404.1520 (2008).

[2]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3]20 C.F.R. §§ 404.1520(b) (2008).

[4]20 C.F.R. §§ 404.1520(c) (2008).

[5]20 C.F.R. §§ 404.1520(d) (2008). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2008).

burden of proving he is incapable of meeting the physical and mental demands of her past relevant work.[6]  If the claimant is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

In the present case, the claimant argues the ALJ erred when she: (1) failed to afford appropriate weight to the treating physician's opinion; (2) failed to request a medical source statement from the treating physician; (3) failed to consider a closed period of disability; (4) misconstrued the treating physician's reasoning for failing to recommend inpatient treatment; and (5) mischaracterized the claimant's ability to perform daily activities.  Based on the reasoning discussed *infra*, the court recommends that the ALJ's decision be affirmed.

## 1.  TREATING PHYSICIAN

With her first argument, the claimant contends the ALJ erred when she failed to afford appropriate weight to the treating physician's opinion.  Specifically, the claimant points to the records of her psychiatrist, Dr. Randall Moskovitz, who wrote on numerous occasions that she "cannot return to work."  In support of her argument, the claimant refers to *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).  The *Newton* decision held specifically that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist,

---

[6]20 C.F.R. §§ 404.1520(e) (2008).

[7]20 C.F.R §§ 404.1520(f)(1) (2008).

[8]*Muse*, 925 F.2d at 789.

an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton* 209 F.3d at 453. Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).

While it is undisputed that the ALJ in the present case did not refer specifically to the *Newton* decision, such a procedure is not mandated. After examining the ALJ's opinion, however, it is clear she addressed each of the factors provided in the Code. Specifically, the ALJ noted the length of the relationship the claimant had with Dr. Moskovitz, discussing the claimant's visits with Dr. Moskovitz as far back as 2004 when the claimant began seeing the psychiatrist. The ALJ went on to detail additional examinations done in 2005 and 2006. As to the extent of the relationship, the notes to which the court refers also provide that Dr. Moskovitz saw the claimant approximately every three months. As for the remaining factors, it is important to note that the ALJ did not reject Dr. Moskovitz's opinion; she refused to give it controlling weight. That is, as the ALJ explained, she did take Dr. Moskovitz's opinion into consideration when determining her RFC. However, the ALJ did find:

> In mental status evaluation with Dr. Moskovitz, the claimant's treating source, progress notes usually showed the doctor's comments which were indicated by "circle items: that he recommended "no change" in medications and "no change" in level of care. Dr. Moskovitz apparently never referred the claimant to inpatient mental

health treatment, which is an indication that he did not consider her condition to be serious enough to require such. I do not find that claimant's level of treatment to be consistent with a finding for disabled.

(Tr. at 20). The ALJ went on to describe Dr. Moskovitz's opinion that the claimant was unable to work as "not consistent with the longitudinal medical record."

The court finds substantial evidence to support the ALJ's decision. While Dr. Moskovitz recorded the claimant was unable to work,[9] every other examination done of the claimant found to the contrary. For instance, Dr. Samuel Holcombe, an examining psychologist, found her symptoms did not rise to a clinical level and mostly appeared to be normal reaction to situational stressors such as the difficulties she was having with her marriage and work. Dr. Holcombe also noted that the claimant put forth limited effort during the examination, and at one point, asked "Is this really necessary?" Dr. Bruce Randolph also did a consultative examination and found no physical impairments at all.

A Psychiatric Review Technique Form completed by a DDS physician in December 2004 found the claimant's impairment "not severe." The Form also provided any restrictions as "mild" and that her reports were only "partially credible due to poor effort." And finally, a DDS medical consultant dated January 2005 found her impairment "not severe."

Accordingly, because the ALJ provided a detailed explanation as to why she gave only limited weight to the opinion of the claimant's treating physician, and because the treating physician's opinion was not consistent with the remaining objective evidence, the court

_____

[9]The court notes that an ALJ need not justify a decision giving little weight to a physician's statement that a claimant is "disabled" or "unable to work," because such decisions are reserved for the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

recommends the ALJ's decision be affirmed as to this issue.

## 2. MEDICAL SOURCE STATEMENT

Next, the claimant argues the ALJ erred when she failed to request a medical source statement from the treating physician, Dr. Moskovitz. However as the government points out, the court will not reverse and ALJ's decision unless the claimant shows she was prejudiced in some way by the deficiencies she alleges. *See Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003). To establish prejudice, a claimant must show that had he requested the medical source statement, the ALJ "could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). In the present case, the claimant provides no argument or evidence whatever to show that any additional information provided by Dr. Moskovitz would have altered the ALJ's decision. Indeed, there is no indication anywhere that the records are anything but complete. To have had Dr. Moskovitz simply complete a form that would define "fair" and "poor," does nothing to dispel the ALJ's determination that his opinions were in direct conflict with the remainder of the record. Accordingly, the court finds the claimant's argument as to this issue to be without merit and recommends that the decision of the ALJ be affirmed.

## 3. CLOSED PERIOD OF DISABILITY

With her third argument, the claimant contends the ALJ erred when she failed to consider a closed period of disability. This argument warrants little discussion. The claimant refers to Dr. Moskovitz's letter that provides his March 2005 opinion that the claimant "should be able to return to full duty on or before September 2005." The claimant, of course, did not return to work by September 2005, and Dr. Moskovitz altered his opinion, describing her diagnosis as

"unchanged" as late as October 2006. Consequently, there would be no basis at all for the ALJ to have considered a closed period of disability from onset to September 2005. Such an argument was made moot when the claimant did not return to work and Dr. Moskovitz changed his opinion. Accordingly, the court finds this argument to be without merit and recommends that the ALJ's decision be affirmed as to this issue.

## 4.  INPATIENT TREATMENT

Next, the claimant contends the ALJ erred when she misconstrued the treating physician's reasoning for failing to recommend inpatient treatment. With this argument, it appears as if the claimant contends that Dr. Moskovitz would have referred her to an inpatient facility had she been able to afford the treatment. Of course, the court is in no position to speculate in this manner. The court has Dr. Moskovitz's reports, and he does not recommend inpatient treatment; nor does he report that he is refraining to do so because of the claimant's financial condition. There is simply nothing in the record to suggest that Dr. Moskovitz believed anything other than what he reported. In those reports, as the ALJ explained, he stated the claimant had a fair ability to deal with work stresses and maintain attention and concentration. He saw the claimant regularly for a period of years, and had he felt inpatient treatment appropriate, the court must conclude that such an opinion would have been reflected in his records.

Because there is nothing in the record to suggest that Dr. Moskovitz believed the claimant should seek inpatient treatment, the court finds the claimant's argument to be without merit and recommends that the ALJ's decision as to this issue be affirmed.

## 5.  DAILY ACTIVITIES

Finally, the claimant contends the ALJ erred when she mischaracterized the claimant's

ability to perform daily activities.  Here, the claimant argues essentially that the ALJ's depiction of her daily activities differs from her own.  In support of this argument, the claimant quotes her own testimony from the hearing that appears to the court to be simply a more detailed – but no more expansive – explanation than that of the ALJ.  The ALJ wrote:

> She reports that currently she does not perform any household chores because she lives with her mother who performs most of them. However, she states occasionally, she can cook, wash dishes or clean up.  She states she spends much of her time at home watching television or lying in bed and listening to music.

(Tr. at 19).  In response, the claimant points out that while she sometimes does housework, she is also anxious.  She does not grocery shop or cook as much as she once did.  While she admitted she pays her own bills, she also admitted she did not do so efficiently "like I should."  As stated, this depiction does not appear to differ greatly from that provided by the ALJ.

Regardless, as the parties are well aware, this court is not able to "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the ALJ, even if the evidence preponderates against the ALJ's decision." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  This court looks only to whether the ALJ applied the correct legal standards and whether substantial evidence supports his decision.  As discussed *supra*, substantial evidence is not an especially difficult standard for the ALJ to meet.  Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In the present case, the court finds the objective medical evidence combined with the claimant's own testimony provide sufficient evidence to support the ALJ's decision.  Certainly, the evidence provides far more than a mere scintilla, and thus, the court recommends the ALJ's decision be

affirmed as to this issue.

It is therefore recommended that the court affirm the ALJ's decision as to all issues.

The parties are referred to 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

Respectfully submitted, this the 19th day of February 2009.

/s/ David A. Sanders_____
UNITED STATES MAGISTRATE JUDGE